UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| METHODIST HOSPITALS OF DALLAS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-4992-B |
| AETNA HEALTH INC. | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Methodist Hospitals of Dallas' Opposed Motion to Remand (doc. 5). For the reasons stated below, the Motion is **GRANTED**.

## I.

## BACKGROUND[1]

This case arises out of untimely payments of insurance claims. Plaintiff Methodist Hospitals of Dallas ("Methodist") is a non-profit Texas corporation that entered into "one or more contract(s)" with Defendant Aetna Health, Inc. ("Aetna"). Orig. Pet. 1–2 at ¶¶ 3, 7. According to Methodist's Original Petition, Aetna was required to pay Methodist on a timely basis consistent with the Texas Prompt Pay Act ("TPPA"). *Id.* at 2; Tex. Ins. Code §§ 843.342, 1301.137. However, Aetna failed to do so. *Id.* Indeed, Methodist alleges that it electronically submitted "clean claims"[2] to Aetna, but

---

[1] The Court draws the relevant background facts from the Plaintiff's Original Petition, filed in state court. Doc. 1-7, Orig. Pet.

[2] Under Section 1301.131: "An electronic claim by a physician or provider, other than an institutional provider, is a 'clean claim' if the claim is submitted using the Professional 837 (ASC X12N 837) format or, if adopted by the commissioner by rule, a successor to that format adopted by the Centers for

Aetna provided payments that were untimely under the TPPA. *Id.* Accordingly, on September 24, 2013, Methodist sent Aetna its Pre-Arbitration Demand (doc. 6-4, Pl.'s Ex. A-2), which included a spreadsheet summary of the "subject claims" (the "Claims Spreadsheet"). The Pre-Arbitration Demand indicated that the "demand [would] remain open for 30 days, at which time [Methodist would] initiate the arbitration process if the dispute was not resolved." Pl.'s Ex. A-2.

As the matter was not resolved, Methodist filed suit against Aetna in the 298th District Court of Dallas County on November 21, 2013. Orig. Pet. In its petition, Methodist alleged "Aetna failed to comply with the prompt payment deadlines set forth in Texas Insurance Code §§ 843.342 and 1301.137 with respect to payments for  health care services provided by Methodist to covered patients," and thus prayed the state court grant it statutory penalties, statutory interest, attorneys' fees, and costs of court. *Id.* at 3–4. Aetna filed an answer with the state court on December 13, 2013, and then removed the case to this Court on December 23, 2013. Docs. 1-9, 1. In its Notice of Removal, Aetna asserted that Methodist's complaint "necessarily raises a federal claim in character because ERISA completely preempts" Methodist's state law claims. Doc. 1 at 2. Accordingly, Aetna insisted jurisdiction in this Court was proper.

On January 3, 2014, Methodist filed its present Motion to Remand (doc. 5). On January 24,

---

Medicare and Medicaid Services or the center's successor." Tex. Ins. Code § 1301.131(a). Similarly, "[a]n electronic claim by an institutional provider is a 'clean claim' if the claim is submitted using the Institutional 837 (ASC X12N 837) format or, if adopted by the commissioner by rule, a successor to that format adopted by the Centers for Medicare and Medicaid Services or the centers' successor." *Id.* at § 1301.131(b).

Under Section 843: "An electronic claim by a physician or provider, other than an institutional provider, is a clean claim if the claim is submitted using the Professional 837 (ASC X12N 837) format or, if adopted by the commissioner by rule, a successor to that format adopted by the Centers for Medicare and Medicaid Services or its successor." Tex. Ins. Code. § 843.336(b). Finally, "[a]n electronic claim by an institutional provider is a clean claim if the claim is submitted using the Institutional 837 (ASC X12N 837) format or, if adopted by the commissioner by rule, a successor to that format adopted by the Centers for Medicare and Medicaid Services or its successor." *Id.* at § 843.336(c).

2014, Aetna timely filed its Response (doc. 10), to which Methodist replied (doc. 13) on February 7, 2014. The Motion is now ripe for the Court's review.[3]

## II.

## LEGAL STANDARD

Title 28 U.S.C. § 1441(a) permits removal to federal court of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction."[4] A federal court has subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States[,]" or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves complete diversity of citizenship. 28 U.S.C. §§ 1331, 1332.

"To determine whether the claim arises under federal law, [the Court] examines the 'well pleaded' allegations of the complaint and ignore[s] potential defenses." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.; see also Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for South. Cal.*, 463 U.S. 1, 10 (1983)("[A] defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law.").

Nevertheless, the well-pleaded complaint rule has a number of exceptions. One such is the

---

[3] The Court notes that, ten days after filing its reply, Methodist filed Plaintiff's Notice of New Authority (doc. 15), alerting the Court of a recent decision out of the Northern District. *See Texas Health Resources v. Aetna Health Inc.*, No. 4:13–CV–1013–A, 2014 WL 553263 (N.D. Tex. Feb. 12, 2014). Thereafter Aetna responded (doc. 16), and Methodist, in turn, replied (doc. 17).

[4] Aetna has the burden of overcoming the initial presumption that jurisdiction is lacking and of establishing that removal is proper. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The removal statute must be strictly construed in favor of remand, and all doubts and ambiguities must be resolved against federal jurisdiction. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

artful pleading doctrine, which holds that a plaintiff cannot defeat removal simply by artfully avoiding any suggestion of a federal issue. *Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012). Another closely-related exception is complete preemption. Complete preemption "recharacterizes" some state law claims as arising under federal law for the purposes of establishing federal question jurisdiction. *Westfall v. Bevan*, No. 3:08–CV–0996–D, 2009 WL 111577, at *3 (N.D. Tex. Jan. 15, 2009) (citing *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc)). "'[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat'l Bank*, 539 at 8). "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Id.* at 207–08 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8). "ERISA is one of those statutes." *Id.* at 208.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* As part of ERISA's comprehensive regulation of employee benefit plans, ERISA contains several "carefully integrated civil enforcement provisions found in § 502(a)." *Id.* at 209 (internal punctuation and citation omitted). These civil enforcement provisions represent congressional policy choices that "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 208–09. Accordingly, any state law "cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" addresses an area of exclusive federal concern and is subject to complete preemption. *Id.* at 209; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66–67 (1987) (holding that

- 4 -

state causes of action that fall within the scope of ERISA's section 502(a) are completely preempted under federal law and therefore removable). Section 502(a), however, "does not purport to reach every question relating to plans governed by ERISA." *Franchise Tax Bd.*, 463 U.S. at 25.

To be sure, claims that fall outside the scope of Section 502 may still be preempted by ERISA Section 514(a). Section 514(a) preempts all state laws that "relate to" an employee benefit plan governed by ERISA. 29 U.S.C. § 1144(a). However this type of preemption—*to wit*, conflict preemption—is not an exception to the well-pleaded complaint rule, but rather a federal defense to a state law claim. *Westfall*, 2009 WL 111577, at *4. It therefore does not provide a basis for removal to federal court. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).

## III.

## ANALYSIS

Methodist asserts two reasons why its claims are not completely preempted by ERISA. First, Methodist insists it does not bring suit against Aetna in the capacity of an assignee of ERISA plan members' benefits. Pl.'s Br. 2. Second, Methodist avers it is not suing for any alleged denial of claims under ERISA plans. *Id.* Instead, Methodist maintains it is asserting its own rights under the TPPA for claims that were paid but paid late. *Id.* at 14. In other words, Methodist argues this matter sounds entirely in state law and should be remanded to state court. *Id.* at 19–20.

Aetna responds that Methodist's case is entirely preempted by ERISA because, "[a]s a matter of law, Methodist stands in the shoes of ERISA beneficiaries." Def.'s Resp. 7. What's more, several of the allegedly late-paid claims were partially denied for coverage reasons under the terms of ERISA plans. *Id.* at 5, 9–12. Consequently, Aetna argues that these claims implicate a right to payment under ERISA and therefore fall within the scope of the statute's civil enforcement provision. *Id.* at

20. Relying on Supreme Court and Fifth Circuit authority, Aetna insists these claims are preempted by ERISA and the case should remain in federal court. *Id.*

In reply, Methodist is adamant that no federal jurisdiction exists. Methodist points out that its Original Petition was confined to late-paid claims rather than denials. Pl.'s Reply 1. It also highlights a declaration from Charles Brizius, "renouncing any intent to recover in this lawsuit for claims where Aetna has disputed coverage," and a January 21, 2014 letter to Aetna's counsel further disavowing such claims. *Id.* at 1–2. Finally, Methodist reminds the Court that any doubts and ambiguities concerning the propriety of removal should be resolved in favor of remand. *Id.* at 2 (citing *Barnett v. Houser*, No. 3:07–CV–1724–B, 2008 WL 89635, at *1 (N.D. Tex. Jan. 9, 2008)).

The Fifth Circuit requires a defendant asserting preemption to prove that "(1) the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA-entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *E.I. duPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (internal quotations omitted); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011). In other words, the "dispositive issue" here is whether Methodist's state law claims are "dependent on, and derived from" the rights of ERISA plan members to recover benefits under the terms of their ERISA plans. *Access Mediquip*, 662 F.3d at 383. The Court will examine Methodist's case accordingly.

A.    *Methodist's Claims Do Not Address an Area of Exclusive Federal Concern*

"[P]reemption is appropriate . . . where the state law addresses areas of exclusively federal concern, including the right to receive benefits under the terms of an ERISA plan." *Baylor Univ. Med. Ctr. v. Ark. Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 507 (N.D. Tex. 2004) (citing *Mem.*

*Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)). Indeed, "ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Davila*, 542 U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). In particular, "ERISA § 502(a), 29 U.S.C. § 1332(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Davila*, 542 U.S. at 208. The Supreme Court has remarked that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life*, 481 U.S. at 65–66). "Hence, 'causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court.'" *Id.* (quoting *Metro. Life*, 481 U.S. at 66).

Aetna argues that Methodist's case falls within the scope of Section 502(a) because Methodist's "late-paid claims" involve coverage disputes under the terms of ERISA plans. Def.'s Resp. 9. In support, Aetna highlights three exemplar claims relating to ERISA plan members D.B., K.P., and M.O. *Id.* at 9–13. Aetna argues that the prompt penalties that Methodist seeks for delayed payment of these claims includes "billed charges," which are excluded from coverage under the terms of these individuals' plans. *Id.* Aetna posits that "Methodist can only collect penalties on the excluded services by overturning the claim determination and establishing that they were covered services." *Id.* at 14. As a result, Aetna insists that Methodist's "claims directly rely on, and are not independent of, the terms of the ERISA plan." *Id.*

Methodist denies that its case falls within Section 502(a) because it insists it "is seeking

TPPA late-pay penalties only, not remedies for underpayments or denials." Pl.'s Reply 10. Methodist claims that Aetna's real dispute is with the correct calculation of the prompt pay penalty, not about what benefits should have been paid under the policies. *Id.* at 7 n.39. As such, Methodist insists Aetna's disagreement is with the "rate of payment" rather than the "right of payment" of these exemplar claims. *Id.* at 7.

Both parties rely on a recent Fifth Circuit case, *Lone Star OB/GYN Associates v. Aetna Health Inc.,* 579 F.3d 525 (5th Cir. 2009), to support their positions. The Court agrees that this authority is critical in helping to resolve the present matter, as the case dealt with facts similar to those now before the Court. Lone Star, a healthcare provider, brought a state-court action against Aetna Health, the administrator of ERISA benefit plans, for alleged violations of the TPPA. 579 F.3d at 528. Lone Star claimed that Aetna Health failed to pay claims at the rates set out in the parties' Provider Agreement and within the time period required by the TPPA. *Id.* Aetna Health removed the case to federal court on the basis of preemption because some of the claims for which Lone Star sought payment were denied. *Id.* In response, Lone Star amended its pleading to include only claims that Aetna Health had partially paid and then moved for remand. *Id.* The district court granted Lone Star's motion, and Aetna Health timely appealed. *Id.*

In reviewing the district court's decision, the Fifth Circuit articulated the two issues necessary to resolve:

> (1) whether state law claims that arise out of a contract between medical providers and an ERISA plan are preempted by ERISA; and (2) whether Lone Star's state law claims in fact implicate only rate of payment issues under the Provider Agreement, or if they actually involve benefit determinations under the relevant plan.

*Id.* at 529. In resolving the first issue, the Court concluded that, "in seeking remedies under the

Texas Prompt Pay Act, Lone Star is not seeking relief that 'duplicates, supplements or supplants' that provided by ERISA." *Id.* at 532 (quoting *Davila*, 542 U.S at 209). This was so because the TPPA allows a physician or provider to collect penalties for claims deemed "payable" that are not paid within the statute's specified amount of time. *Id.* However, the court acknowledged that a TPPA remedy *could* overlap with the ERISA enforcement scheme if there were a dispute whether a claim was "payable"—"whether there has been a denial of benefits because there is a lack of coverage." *Id.* In light of this conclusion, the court next considered whether Lone Star's particular claims overlapped with ERISA. "The payment claims at the heart of the [*Lone Star*] dispute [were] those that were partially paid by Aetna." *Id.* at 533. Ultimately the court held that "claims for underpayment under the Provider Agreement, which do not implicate coverage determinations under the terms of the relevant plan, are not preempted under ERISA." *Id.* However, the court warned that if "any individual payment claim potentially encapsulates multiple procedures only some of which were covered, and partial payment thus resulted from a denial of benefits under the plan, the claim *may* be preempted." *Id.* (emphasis added). Because the Fifth Circuit could not determine based on the record before it whether the partially-paid claims were denied for lack of coverage or because Aetna misinterpreted the Provider Agreement, it remanded the case to the district court to decide whether the claims implicated coverage decisions under the plan and a federal issue under ERISA. *Id.*

Applying *Lone Star* to the present case, the Court must determine whether Aetna has demonstrated that the late-paid claims on which Methodist bases its cause implicate coverage decisions under ERISA. *See Lone Star*, 579 F.3d at 533; *Access Mediquip*, 662 F.3d at 382 (noting that defendant bears the burden of proving preemption). After reviewing the Original Petition as well as

the parties' filings, the Court concludes that Aetna has not sustained its burden of proving preemption.

As previously mentioned, Aetna relies on the three exemplar claims to show that Methodist is suing to collect penalties for some claims that were partially denied. However, those claims were only included in the Claims Spreadsheet sent to Aetna *before* the lawsuit. Nowhere are they identified within Methodist's Original Petition, which states only that Methodist electronically submitted clean claims that Aetna failed to timely pay under the TPPA. Orig. Pet. 2 at ¶ 9. Accordingly, the exemplar claims do not appear to be at issue in the present case. *See Mem. Hermann Hosp. Sys. v. Aetna Health Inc.*, No. H–09–3342, 2010 WL 3817163, at *3 (S.D. Tex. Sept. 27, 2010) (internal citations omitted) (emphasis in original) ("Aetna points to a spreadsheet Memorial provided to it, pre-suit, as support for its position that Memorial is seeking, at least in part, to challenge some of Aetna's coverage determinations. However, that spreadsheet and any coverage claims revealed there was not included by Memorial *in this case*."); *see also* Pl.'s Br. 20 ("Plaintiff's Original Petition never references a claim that has been denied, does not incorporate by reference any prior pre-suit claims spreadsheet, and on its face, limits Plaintiff's claims to those that "Aetna paid, but failed to timely pay.").

This is not to suggest that the Court has neglected to look beyond the Original Petition or that it will tolerate "artful pleading" by Methodist, as Aetna has alleged. *See Christie v. Aetna Health Inc.*, No. 4:10–CV–1766, 2011 WL 5864248, at *4 (S.D. Tex. Nov. 22, 2011) (quoting *Davila*, 542 U.S. at 209) (noting that, though the plaintiff's complaint only alleged violations of state law, "the Court must scratch beneath the surface to discover whether any of those claims for relief 'duplicates, supplements, or supplants the ERISA civil enforcement remedy.'"); *see also* Def.'s Resp. 6. The Court

recognizes that Methodist's petition fails to identify which specific claims are at issue. However, the Court concludes that, by virtue of its later filings, Methodist has clarified its position and, more importantly, waived any ERISA claims. Indeed, Methodist has repeatedly stated in its filings that it did not bring suit with respect to any denied claims. *See, e.g.,* Pl.'s Br. 4 ("Suit was not brought, and no claims were so pleaded, for any claims denied by Aetna."); *id.* at 15 (emphasis in original) ("Plaintiff here specifically references only claims 'which Aetna *paid but failed to timely pay* under the Texas Prompt Pay Act.' Plaintiff did not seek remedies for any claims that were denied."). In addition, Methodist has expressly indicated in its reply brief that it "is seeking TPPA late-pay penalties only, not remedies for underpayments or denials." Pl.'s Reply 10. Further, Methodist's Senior Vice-President, Charles Brizius, declared "Methodist-Dallas has made, makes, and will make no claims in this lawsuit by virtue of any right to step in the shoes of individual patients, who have contractually or otherwise provided Methodist-Dallas with an assignment of their rights against certain plans." Doc. 6-2, Pl.'s Ex. A, Brizius Decl. 3–4 at ¶ 11. Finally, Aetna's own Exhibit A-5 includes a letter from Methodist's counsel, in which counsel states that claims regarding denials or claims arising out of assignment of patients' rights under certain plans are "claims the Plaintiff has never made, and to the extent you believe they somehow are contained within either Settlement Claims Spreadsheet, they are hereby abandoned, and Plaintiffs concede they will be judicially estopped from ever making TPPA claims with respect to them." Doc. 11-6, Def.'s Ex. A-5 at 0062.

The Court interprets these statements to mean Methodist has excluded from its cause of action any claims submitted to Aetna which Aetna failed to timely pay for reasons relating to benefit determinations. In other words, Methodist is "waiving and abandoning any claim that is or could be conceived as federal in nature" and therefore is not contesting any of those claims upon which Aetna

offered late payment because of coverage determinations under ERISA. *Plano Orthopedic & Sports Med. Ctr., P.A. v. Aetna U.S. Healthcare of North Texas, Inc.*, No. 3:09–CV–2124–L, 2011 WL 1428977, at *2 (N.D. Tex. Apr. 12, 2011); *cf. Lone Star*, 579 F.3d at 533 ("If, however, any individual payment claim potentially encapsulates multiple procedures only some of which were covered, and partial payment thus resulted from a denial of payments under the plan, the claim may be preempted.").

In light of the Court's conclusion that Methodist has waived claims that implicate coverage determinations, Methodist's pleading is limited to claims only arising under the TPPA. The Fifth Circuit has stated that this statute does not offer relief that "'duplicates, supplements or supplants' that provided by ERISA." *Lone Star*, 579 F.3d at 532 (quoting *Davila*, 542 U.S. at 209). In addition, because Methodist's right to recovery will only lie in the TPPA—not an ERISA plan, Methodist lacks standing to bring a claim under ERISA, notwithstanding any assignments of rights by plan beneficiaries. *See Lone Star*, 579 F.3d at 533 n.3 (internal citations omitted) ("A healthcare provider suing on the basis of an assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan. But where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing."); *Baylor*, 331 F. Supp. 2d at 509–10 (internal citations omitted) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)) ("That Baylor could have sued as an assignee is not dispositive. Baylor, as the 'master of [its] claim,' may avoid federal jurisdiction by 'exclusive reliance on state law.'"). For these several reasons, the Court concludes that Aetna has failed to demonstrate that Methodist's claims address an area of exclusive federal concern.

B.      *Methodist's Claims Do Not Directly Affect the Relationship Among Traditional ERISA-Entities*

Given the Court's determination that Methodist's claims only concern state law that enforces prompt payment of claims by insurers to independent health care providers—not plan participants or beneficiaries, the Court further concludes that Methodist's claims do not directly affect the relationship between traditional ERISA-entities. *Baylor*, 331 F. Supp. 2d at 511–12. In other words, "[b]y enforcing the Texas statute[] at issue, plan participants' actual obligations under the terms of their various plans would remain constant and the plans' terms would be unmodified." *Id.* at 512. Thus, Methodist's right to recovery exists independently of plan members' rights, and its claims are not completely preempted by ERISA.

In sum, as the court in the recently-decided *Texas Health Resources* case stated clearly:

> Applying the *Lone Star* holding to the instant action, in order to avoid a remand, Aetna was required to show that claims asserted by plaintiff in this action implicated coverage determinations under the terms of the relevant ERISA plans. Defendant has failed to do that, with the consequence that it has failed to show that any of plaintiff's claims are completely preempted under ERISA.
>
> More to the point, defendant has failed to carry its burden to demonstrate to the court that federal removal jurisdiction existed as to this action when defendant removed it to this court.

2014 WL 553263, at *7. Accordingly, Methodist's Motion to Remand must be and is **GRANTED**.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**. The Court **ORDERS** this case **REMANDED** to the 298th District Court of Dallas County, Texas.

SO ORDERED.

SIGNED: July 30, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE